IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| REDWOOD PROFESSIONAL PLAZA, L.C. and TINGEY CONSTRUCTION COMPANY, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF WEST JORDAN, TOM BURDETT, individually and in his capacity as director of community development, NATHAN FRANCIS, individually and in his capacity as assistant city planner, and JOHN AND MARY DOES 1 - 10, <br><br> Defendants. | ORDER AND <br><br> MEMORANDUM DECISION <br><br><br> Case No. 1:07 CV 153 (TC) |

Plaintiffs Redwood Professional Plaza, L.C. and Tingey Construction Company brought this 42 U.S.C. § 1983 action against the City of West Jordan, its Director of Community Development, Tom Burdett, and its Assistant City Planner, Nathan Francis. Plaintiffs allege that the interpretation and application of a West Jordan, Utah ordinance violated federal and state due process, equal protection, and takings clause guarantees. Because Plaintiffs have not pursued compensation under Utah's inverse condemnation procedure, the court concludes that the federal claims are not ripe for judicial review. Moreover, Plaintiffs' claims that Defendants violated the Utah Constitution cannot serve as the basis for a § 1983 action. Accordingly, Plaintiffs' suit is dismissed.

1

**BACKGROUND**

The parties do not dispute the following material facts. Plaintiffs launched a project to develop a piece of property in West Jordan, Utah, into a subdivision that would be known as the Redwood Professional Plaza. Before development started, the Plaintiffs went about securing the necessary approvals from the City of West Jordan (the City).

At the time, Municipal Code § 87-5-111, a West Jordan ordinance, generally required developers to bury utility lines in new developments like the Redwood Professional Plaza. But Section 87-5-111(c) also provided that the "provisions of this section shall not apply to . . . existing utilities." (Pls.' Mem. Supp. Summ. J., ii, Docket No 33.) The meaning of the existing utilities language is the core of this dispute between the parties.

In November 2003, the staff of the West Jordan Planning Commission prepared a report that recommended approval of the Redwood Professional Plaza project plan. Relevant to this dispute, the report noted in several places that the Planning Commission should require the Plaintiffs "to place all electrical, communications, television service cables and similar distributed service wires and/or cables underground as per Section 87-5-111(c)." (Defs.' Mem. Supp. Summ. J., Ex. A., 1, 2, Docket No. 21.)

The Planning Commission met on November 5, 2003, and approved the plan for Redwood Professional Plaza. As recommended by staff, the Planning Commission required that the Plaintiffs "place all electrical, communications, television service cables, and similar distribution service wires and/or cables underground as per Section 87-5-111(c)." (Defs.' Mem. Supp. Summ. J., Ex. B, Docket No. 21.) Later that month, the Planning Commission approved the preliminary site plan and again included the requirement that Plaintiffs "place all electrical,

communications, television service cables, and similar distribution services wires and/or cables underground as per Section 85-7-111(c)." (Defs.' Reply Mem. Supp. Summ. J., 6, Docket No. 30.)

Having secured the necessary approvals from the City, Plaintiffs started work on the Redwood Professional Plaza project. Plaintiffs buried all new utility lines on the property, leaving above ground only those Rocky Mountain Power lines that ran along Redwood Road. Because these power lines were in place before the project started, Plaintiffs considered them to be "existing utilities" and exempt from the burial requirement pursuant to Section 87-5-111(c). Plaintiffs contend that they made clear their intention to leave these power lines above ground in all of the drawings and plats submitted to Defendants. Further, Plaintiffs claim that Defendants never explained that Plaintiffs were specifically required to bury these power lines.

After Plaintiffs had completed final landscaping at the Redwood Professional Plaza property, put the sidewalks in place, and installed the sprinkler system, the City conducted a final inspection at the Plaintiffs' request.

During the inspection, the City informed Plaintiffs that they had failed to comply with the requirements of Section 85-7-111 because they had not buried all of the utility lines on the property. According to Defendants, Section 85-7-111(c), on which Plaintiffs had relied in deciding not to bury the power lines along Redwood Road, excludes from the burial requirement only those utility lines in existence when the ordinance was passed. Because Defendants contend that the power lines did not qualify as "existing utilities" and that they should have been buried, the City denied Plaintiffs a final occupancy certificate. Defendants argue that they informed Plaintiffs on numerous occasions of their responsibility to place all utility lines

underground, but Plaintiffs argue that they could not have known of Defendants' allegedly arbitrary interpretation of Section 85-7-111(c).

Between October 2006 and July 2007, Plaintiffs sent letters to various City officials, arguing that they should not be required to bury the power lines along Redwood Road. Plaintiffs explained that the power lines along Redwood Road were existing utilities based on their reading of Section 87-5-111(c) and exempt from the grounding requirement. Although the parties dispute whether a formal administrative process existed that Plaintiffs could have used to appeal the denial of the final occupancy certificate, Plaintiffs admit that they did not pursue any formal appeals. Plaintiffs also did not pursue an inverse condemnation proceeding in state court.

Plaintiffs filed this § 1983 action in November 2007. They first contend that Defendants arbitrarily and improperly enforced the ordinance in violation of the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 7 of the Utah Constitution. Second, Plaintiffs argue that Defendants' actions as described here constitute a regulatory taking in violation of the takings clause of the Fifth Amendment of the United States Constitution and Article I, Section 22 of the Utah Constitution. Third, Plaintiffs allege that they have been treated differently regarding the burial requirement than other similarly situated developers in violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 24 of the Utah Constitution. Finally, Plaintiffs present a claim for zoning estoppel based on the expenses they incurred with the development of the property.

In their motion for summary judgment, Defendants contend that Plaintiffs' § 1983 suit is not yet ripe for review in part because Plaintiffs failed to make use of Utah's inverse

4

condemnation procedure.

## ANALYSIS

**Federal Claims**

Ripeness is a justiciability doctrine that aims to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Morgan v. McCotter, 365 F.3d 882, 890 (10th Cir. 2004) (quoting Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807 (2003) ). Whether a matter is ripe for judicial review is an inquiry that affects a court's subject matter jurisdiction under the case or controversy clause of Article III of the United States Constitution. New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1498-99 (10th Cir. 1995). Consequently, a court must treat a challenge based on ripeness as a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Id. at 1499.

When considering whether a case is sufficiently ripe for review, a court is to evaluate "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Bateman v. City of W. Bountiful, 89 F.3d 704, 706 (10th Cir. 1996) (quotation marks omitted). The "plaintiff has the burden of producing evidence to establish that the issues are ripe." Signature Props. Int'l Ltd. v. City of Edmond, 310 F.3d 1258, 1266 (10th Cir. 2002).

With this standard in mind, the court now reviews the issue of whether Plaintiffs have sufficiently demonstrated that the issues presented by their federal takings, due process and equal protection claims are ripe for review.

    A.    **Takings Claims**

Although the parties dispute whether an administrative appeals process existed that should have been exhausted, Plaintiffs concede that they did not pursue any such process nor did

they pursue an adverse state ruling on the takings claims as allowed by Article I, Section 22 of the Utah Constitution.[1]  (See Pls.' Mem. Opp'n Summ. J., 20, Docket No. 27.)  Plaintiffs maintain that because they have brought their claims in this action, they did not need to pursue an administrative appeal or a state law suit.

The Fifth Amendment of the United States Constitution "does not proscribe the taking of property; it proscribes taking without just compensation."  Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 463 U.S. 172, 194 (1985).  Before a court can properly determine whether the state violated the Fifth Amendment "the aggrieved property owner must show first that the state deprived him of his property, and second, that the state refused to compensate him for his loss."  SK Finance SA v. La Plata County, Bd. of County Comm'rs, 126 F.3d 1272, 1276 (10th Cir. 1997); see also B. Willis, C.P.A., Inc. v. BNSF Ry. Corp., 531 F.3d 1282, 1298-99 (10th Cir. 2008) (recognizing validity of Williamson County and associated legal principles).  Where a state provides for a procedure through which a property owner may seek just compensation, that owner "cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."  Williamson County, 463 U.S. at 194-95; B. Willis C.P.A., 531 F.3d at 1298; SK Finance SA,

---

[1]Defendants argue that Plaintiffs failed to exhaust available administrative remedies, namely the administrative appeal process provided for by ordinance.  Defendants further contend that Section 89-6-903 of the Municipal Code allows the Planning Commission to waive requirements under certain circumstances when they are "unreasonable or impractical."  (Defs.' Mem. Supp. Summ. J., 9, Docket No. 21.)  Plaintiffs argue that such an appeals process does not actually exist, and that even if it did, "any further attempts would have been . . . futile."  (Pls.' Mem. Opp'n Summ. J., 24, Docket No. 27.)  Considering Plaintiffs' failure to pursue a state inverse condemnation suit before bringing this § 1983 action, the court concludes that it need not consider whether Plaintiffs failed to exhaust administrative remedies and what the impact of any alleged failure might be.

126 F.3d at 1276; see, e.g., Nat'l Adver. Co. v. City & County of Denver, 912 F.2d 405, 413 (10th Cir. 1990) (concluding regulatory taking claim based on two ordinances restricting billboards along freeways was unripe until plaintiffs had attempted to obtain just compensation through state provided procedures).

Article I, Section 22 of the Utah Constitution guarantees that "[p]rivate property shall not be taken or damaged for public use without just compensation." If private property is taken or damaged for public use without the formal exercise of Utah's eminent domain power, state law provides that "a 'property owner may bring an inverse condemnation action . . . to recover the value of the property.'" Gardner v. Bd. of County Comm'rs of Wasatch County, 178 P.3d 893, 902 (Utah 2008) (quoting Farmers New World Life Ins. Co. v. Bountiful City, 803 P.2d 1241, 1243 (Utah 1990)); see also Patterson v. American Fork City, 67 P.3d 466, 477 (Utah 2003) (noting in Utah "the appropriate post-taking remedy is an inverse condemnation action"). The Utah Supreme Court has allowed suit for inverse condemnation even in instances where, as here, it is the effect of an ordinance that gives rise to the alleged taking. See Bateman, 89 F.3d at 709 (citing Coleman v. Utah State Land Bd., 795 P.2d 622, 627 (Utah 1990)).

In Bateman, the plaintiff had obtained a building permit from the city to build a house, garage and workshop on his property. He paid the necessary fees and submitted a plot plan to the city, which periodically sent inspectors to the property. Twelve years after he completed construction of these structures, the plaintiff tried to sell a portion of his property. He learned that the City had recorded a certificate of noncompliance, allegedly because the structures violated local setback and yard requirements, which effectively prevented him from selling or refinancing the property. The Tenth Circuit concluded that because the landowner never sought

compensation pursuant to Utah's inverse condemnation law, his § 1983 suit was not ripe for review.

Bateman is instructive here.[2] Because Utah law provides a procedure through which landowners can secure compensation for an alleged taking, Plaintiffs are required to take advantage of this procedure before bringing a § 1983 action. See Bateman, 89 F.3d at 709 (1996) ("'[A] property owner [must] utilize procedures for obtaining compensation before bringing a § 1983 action.'" (quoting Williamson County, 473 U.S. at 195 n.3)); see also SK Finance SA, 126 F.3d at 1276 (same); Nat'l Adver. Co., 912 F.2d at 413 (same). Plaintiffs failed to do so.

It is not enough that Plaintiffs attempt to bring an inverse condemnation action in this lawsuit. Section 1983 "serves as the basic vehicle for federal court review of alleged state and local violations of federal law," but review is premature until an alleged violation of law has actually occurred. Erwin Chemerinsky, Federal Jurisdiction 466 (4th ed. 2003). Case law is clear that a violation of the Fifth Amendment occurs not with the taking of a property, but with the taking without just compensation. Plaintiffs cannot contend that such a violation has actually occurred here when they have failed to make use of the state procedure for compensation. See B. Willis, C.P.A, 531 F.3d at 1299 (noting that "whether an unconstitutionally improper taking occurred cannot be determined until both the taking and compensation have been legally evaluated"). Because Plaintiffs failed to pursue an inverse condemnation action, the court concludes that their claims are premature and not ripe for the court's review.

---

[2] Although the Tenth Circuit decided Bateman more than a decade ago, continuous references in recent opinions underscore the validity of the case and the court's consideration here. See, e.g., B. Willis, C.P.A., 531 F.3d at 1282-1305.

### B. Due Process and Equal Protection Claims

Plaintiffs argue that the failure to bring a state inverse condemnation action should have no bearing on the ripeness of their due process and equal protection claims. Plaintiffs contend that Defendants' denial of a final occupancy certificate would still constitute a violation of equal protection and due process guarantees. But the Tenth Circuit has repeatedly held that "the ripeness requirement of Williamson County applies to due process and equal protection claims that rest upon the same facts as a concomitant takings claim." Bateman, 89 F.3d at 709 (collecting cases). In explaining the purpose behind this requirement, the Tenth Circuit noted that it is "reluctant 'to impose new and potentially inconsistent obligations upon the parties' in the context of factual situations that 'fall squarely within' the takings clause.'" Hallco Envtl. Inc. v. Comanche County Bd. of County Com'rs, No. 97-6083, 1998 WL 339460 (10th Cir. June 10, 1998) (quoting Bateman, 89 F.3d at 709); see B. Willis, C.P.A., Inc., 531 F.3d at 1299 n.19. ("[W]here the property interest in which a plaintiff asserts a right to procedural due process is coextensive with the asserted takings claim, Williamson County's ripeness principle still applies." (internal quotation omitted)).

Despite Plaintiffs' best efforts to reframe their equal protection and due process challenges, these claims are based on the same facts as their takings claim. Central to all three is the assertion that Defendants denied Plaintiffs use of their property by insisting that the power lines along Redwood Road be buried before the property could be occupied. Whether this denial is associated with an arbitrary reading of an ordinance or is different from the situation encountered by other similarly situated developments does not change the nature of the primary objection. See Hallco Envtl., 1998 WL 339460 *7 (holding plaintiff's due process, equal

9

protection, and contract clause claims are "subsumed within the takings claim" as they rely on the same facts as his takings clause claims and a "contrary holding would enable a resourceful litigant . . . to circumvent the ripeness requirements by artful pleading"). Based on clear guidance from the Tenth Circuit, the court concludes that Plaintiffs' due process and equal protection claims—like the takings claim—are not ripe for review. A contrary conclusion here "would render the Supreme Court's decision in Williamson nugatory, as it would enable a resourceful litigant to circumvent the ripeness requirement simply by alleging a more generalized due process or equal protection violation." Bateman, 89 F.3d 704; see B. Willis, C.P.A., 531 F.3d at 1299 n.19.

**State Claims**

Finally, the court considers Plaintiffs's claims for relief under the Utah Constitution. In this § 1983 action, Plaintiffs allege violations of Article I, Sections 7, 22, and 24 of the Utah Constitution. (Compl., Docket No. 2.) However, "[a]n action under § 1983 . . . cannot be maintained on the basis of alleged violation of state law," including a violation of a state constitutional right. Stanko v. Maher, 419 F.3d 1107, 1117 (10th Cir. 2005); see also Radvansky v. City of Olmsted Falls, 395 F.3d 291, 313-314 (6th Cir. 2005) (noting that because Section 1983 codified the Civil Rights Act of 1871, which was passed to enforce provisions of the Fourteenth Amendment and neither "addresses the rights secured to citizens by the individual state constitutions," a "claimed violation of a state constitutional right is not cognizable under § 1983"). To the extent that Plaintiffs present alleged violations of the Utah Constitution to sustain this § 1983 action, those claims are improper and accordingly dismissed.

Moreover, having concluded that the federal claims are not ripe for review, the court

declines to exercise its pendent jurisdiction over any remaining state law claims, including Plaintiffs' inverse condemnation suit pursuant to Article I, Section 22 of the Utah Constitution.

**ORDER**

Accordingly, Defendants' Motion for Summary Judgment, which the court considers under Rule 12(b)(1), is GRANTED. (Docket No. 20.) Plaintiff's Motion for Partial Summary Judgment is DENIED. (Docket No. 32.) The court declines to exercise its pendent jurisdiction over any remaining state claims.

DATED this 19th day of May 2009

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge